# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BAHIYUDEEN HAKEEM, | : | CIVIL NO. 4:10-CV-1627 |
| | : | |
| Plaintiff, | : | (Judge McClure) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| JON FISHER, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This is a *pro se* civil rights action brought by Bahiyudeen Hakeem, a state

inmate who is currently confined at the State Correctional Institution (SCI)

Huntingdon. (Doc. 1). Hakeem initially filed a complaint on August 5, 2010, (Doc. 1)

and then tendered an amended complaint on September 20, 2010. (Doc. 18.) In these

pleadings Hakeem has alleged that he suffers from a variety of ailments, including: (1)

a bullet lodged in his foot; (2) blood clotting problems related to a brain injury; and

(3) herpes simplex, which causes breakouts and rashes. Hakeem's amended complaint[1]

---

[1] We are assessing this case solely on the basis of the averments set forth in
Hakeem's amended complaint since, as a matter of law, an amended complaint
takes the place of the original complaint, effectively invalidating the original
complaint. Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay
Energy Co.), 226 F.3d 160, 162 (2d Cir. 2000) ("[A]n amended pleading ordinarily
supersedes the original and renders it of no legal effect"); see 6 Charles Alan
Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476
(2d ed. 1990) ("A pleading that has been amended … supersedes the pleading it

named ten prison officials as Defendants, and alleged that these prison officials have violated his rights under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment by displaying deliberate indifference to his serious medical needs.

Hakeem's amended complaint initially listed ten named Defendants. Included among these ten Defendants were the following four individuals: Jon Fisher, the superintendent at the prison, two nurse supervisors, Gerald Hartman, and Julie Cowher, and a nurse, Shannon Parks. While these four persons were named as Defendants in Hakeem's amended complaint, the amended complaint was devoid of factual allegations regarding individual misconduct by any of these Defendants, and the liability of a number of the Defendants appeared to be premised on principles of *respondeat superior* because these Defendants served as prison supervisors. On October 18, 2010, these Defendants filed a motion to dismiss which, in part, challenged the legal sufficiency of the Plaintiff's complaint with respect to these four Defendants. (Docs. 31 and 32.) Hakeem responded to this motion, (Doc. 35) filing a brief which was notable in its candor with respect to these four Defendants stating: "With regard to these defendants [Fisher, Parks, Cowher and Hartman] the plaintiff would concede to this [dismissal] after review of much case law there has been no

---

modifies…. Once an amended pleading is interposed, the original pleading no longer performs any function in the case….").

personal involvement from these defendants. So plaintiff motions that they be remove[d] as defendants to this action." (Doc. 35, p. 5.)

With Hakeem's voluntary dismissal of his complaint against these four Defendants, six Defendants remain in this action: Dr. Christina Doll, Dr. Ronald Long, Physician Assistant Joshua Mahute, who is identified only as "Josh" in Hakeem's complaint, Health Care Administrator William Dreibelbis, and two Physician Assistants who are only identified as Gillman and Tyson[2]. (Doc. 18.) As to these remaining Defendants, Hakeem alleges that the Defendants violated his rights under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. In particular, in his amended complaint, Hakeem protests the care he received from prison medical staff for bullet fragments lodged in his foot. Yet, while Hakeem complains about this care, alleging deliberate indifference by the Defendants to his foot injury, his pleadings provide a different, and more detailed, account of the care he has received.

---

[2]It appears that Gillman and Tyson, who have not been further identified, also apparently have not been served in this case, and have not, therefore, responded in any fashion to this complaint. Nonetheless, we will examine the adequacy of the amended complaint with respect to these defendants under the screening standards prescribed by 28 U.S.C. § 1915(e)(2)(B)(ii), which are substantively similar to those defined by Rule 12(b)(6).

According to Hakeem's amended complaint, some time prior to March 22, 2010, while he was being seen by Physician Assistant Gillman regarding some other medical complaint, he discussed these bullet fragments in his foot. (Doc. 18, ¶19.) In response to this complaint, Hakeem alleges that Gillman recommended that he sign up for a separate sick call appointment to address this other medical concern.(Id., ¶20.) This averment, which claims that Gillman recommended that the Plaintiff get further care for his foot, is the only factual recital in the amended complaint relating to Defendant Gillman.

Hakeem then alleges that he followed Gillman's advice and scheduled a sick call visit on March 22, 2010, at which time he requested orthopedic shoes. (Id., ¶21.) While the Physician Assistant on duty that day, Physician Assistant Tyson[3], allegedly did not independently examine Hakeem's foot, his concerns were not ignored. Quite the contrary, Hakeem alleges in his amended complaint that he was scheduled for a medical examination by Dr. Doll two days later, on March 24, 2010. (Id., ¶22.) During this March 24 appointment Dr. Doll is alleged by the Plaintiff to have examined Hakeem's foot, recommended orthopedic shoes for Hakeem, and prescribed medication for him, medication which Hakeem declined to take. (Id.) On the basis of these factual averments– which indicate that Dr. Doll examined his foot, prescribed

---

[3]This is the only factual averment relating to Defendant Tyson in the amended complaint.

medication, and recommended orthopedic shoes for Hakeem– the Plaintiff alleges that this Defendant was deliberately indifferent to his medical needs.

According to the amended complaint, approximately ten days after his appointment with Dr. Doll, Hakeem was seen by another doctor at the prison, Dr. Doll's supervisor, Dr. Ronald Long, who advised Hakeem that from his review of x-rays, neither corrective surgery nor orthopedic shoes were called for in Hakeem's case. (Id., ¶¶23 and 24.) Thus, according to the amended complaint, Hakeem was seen by at least four care-givers over the span of a month regarding these foot complaints, (id., ¶¶19-24); was provided a cane to assist him in walking, (id., ¶26); had x-rays examined by physicians, (id. ¶¶23 and 24) and had pain medications prescribed for him iId., ¶22). Despite this care, described by Hakeem in his pleadings, the Plaintiff insists that he and Dr. Long had a dispute regarding the need for some forms of treatment for his foot injury, specifically, they disagreed regarding the medical necessity of corrective surgery and orthopedic shoes. Hakeem's disagreement with Dr. Long regarding the need for orthopedic shoes or corrective surgery is the gist of his constitutional claim as to this Defendant.

Hakeem alleges that he pursued this medical dispute through the prison grievance process, but had his grievance denied by Defendant William Dreibelbis, who accepted Dr. Long's views regarding the lack of medical necessity for corrective surgery and orthopedic shoes. (Id., ¶31.) These allegations that Defendant Dreibelbis

denied his grievance are the only factual averment in the amended complaint relating to Defendant Dreibelbis.

Finally, as for Defendant Physician Assistant Joshua Mahute, who is identified only as "Josh" in Hakeem's complaint, a review of the amended complaint reveals that it contains no factual recitals whatsoever concerning actions allegedly taken, or neglected, by this particular Defendant. Thus, the amended complaint makes no reference to this specific Defendant, other than including him in the caption of the complaint. (Doc. 18.)

A number of the Defendants have now filed motions to dismiss various claims lodged by Hakeem in his amended complaint. (Docs. 29 and 32.) These motions have been fully briefed by the parties (Docs. 30, 33, and 35) and are now ripe for resolution. The motions also identify legal deficiencies in the Plaintiff's amended complaint with respect to two Defendants who have not yet been served, Defendants Gillman and Tyson. These deficiencies, in turn, warrant examination under the screening standard prescribed by § 1915(e)(2)(B)(ii). Having conducted this examination, for the reasons set forth below, it is recommended that these motions to dismiss be granted and this case be dismissed as to all remaining Defendants.

## II. __Discussion__

### A. __Rule 12(b)(6)– The Legal Standard.__

A number of the Defendants have filed motions to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition, this Court also has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Furthermore, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.

2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which

relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 1950.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action. We will also apply this analytical framework when assessing whether those Defendants who have not yet been served should be dismissed from this action under § 1915(e)(2)(B)(ii) .

## B. Legal Standards Governing Eighth Amendment "Deliberate Indifference" Claims in a Prison Medical Context.

Liberally construed, the gravamen of Hakeem's complaint is that prison officials violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. Hakeem faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Hakeem must plead facts which:

[M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-

defendant must actually have known or been aware of the excessive risk
to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id. at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate

medical care in accordance with this standard, Hakeem is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.

Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted

to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and

doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

There is a necessary corollary to this principle, limiting the reach of the Eighth Amendment in a prison medical setting. In a case such as this, where the plaintiff's complaint reflects that an inmate received some level of on-going medical care, it is also well-established that prison supervisors may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is

in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, supervisory staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007). This rule applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing an inmate grievance concerning medical issues. Where supervisory staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate

grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Garvey v. Martinez,  2010 WL 569852,*7 (M.D.Pa. Feb. 11, 2010)(citations omitted); see  Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006).

Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

### C. Procedural Benchmarks for Inmate Eighth Amendment Claims

In addition to these substantive standards, inmate Eighth Amendment complaints must also satisfy certain procedural thresholds. For example, the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See also Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) ("The [PLRA] requires that prisoners seeking relief in federal court must first exhaust the administrative remedies available at the prison level.").

The PLRA's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here grounded in alleged violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution. See, e.g., Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). A prisoner is not required to allege that administrative remedies have been exhausted. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). Rather, failure to exhaust administrative remedies is an affirmative defense, id., and as such must be pled and proven by the defendants, Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Furthermore, although this exhaustion requirement is not a

jurisdictional bar to litigation, the requirement is strictly enforced by the federal

courts.  See Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that

exhaustion is mandatory under the PLRA and that unexhausted claims cannot be

brought in court.").  The rigorous enforcement is mandated by the recognition that §

1997e's exhaustion requirement promotes important public policies.  As the United

States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of
> exhaustion requirements.  They include (1) avoiding premature
> interruption of the administrative process and giving the agency a chance
> to discover and correct its own errors; (2) conserving scarce judicial
> resources, since the complaining part may be successful in vindicating
> his rights in the administrative process and the courts may never have to
> intervene; and (3) improving the efficacy of the administrative process.
> Each of these policies, which Congress seems to have had in mind in
> enacting the PLRA, is advanced by the across-the-board, mandatory
> exhaustion requirement in § 1997e(a). . . . [A] comprehensive exhaustion
> requirement better serves the policy of granting an agency the
> "opportunity to correct its own mistakes with respect to the programs it
> administers before it is haled into federal court."  Moreover, "even if the
> complaining prisoner seeks only money damages, the prisoner may be
> successful in having the [prison] halt the infringing practice" or fashion
> some other remedy, such as returning personal property, reforming
> personal property policies, firing an abusive prison guard, or creating a
> better screening process for hiring such guards.  And when the prisoner
> obtains some measure of affirmative relief, he may elect not to pursue his
> claim for damages.  In either case, local actors are given the chance to
> address local problems, and at the very least, the time frame for the
> prisoner's damages is frozen or the isolated acts of abuse are prevented
> from recurring.  An across-the-board exhaustion requirement also
> promotes judicial efficiency. . . .  Moreover, even if only a small
> percentage of cases settle, the federal courts are saved the time normally
> spent hearing such actions and multiple appeals thereto. . . .  In cases in
> which inmate-plaintiffs exhaust their remedies in the administrative

process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000) (citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to the rule. Id. Instead, courts have typically required complete administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component onto this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding in federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). In this regard, the PLRA requires "'proper exhaustion,' meaning that the prisoner must comply with all the administrative requirements and not merely wait until there are no administrative remedies 'available.'" Williams, 482 F.3d at 639 (citing Woodford v. Ngo, 548 U.S. 81, 85 (2006)). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully complete the prison grievance process are barred from subsequently litigating their claims in federal court, Booth v. Churner, 206 F.3d 289 (3d Cir. 2000), and the failure to

properly exhaust administrative remedies will result in the procedural default of a prisoner's claim, <u>Spruill</u>, 372 F.3d at 230-32.

**D.** **These Statutory and Constitutional Considerations Call for Dismissal of Hakeem's Claims**

     **1.** **Hakeem Has Failed to Allege Sufficient Well-Pleaded Facts to Justify Holding Defendants Gillman, Tyson, Doll and Mahute Personally Liable for Eighth Amendment Violations**

Applying these constitutional benchmarks to Hakeem's complaint it is apparent that, in its current form, Hakeem's amended complaint fails to state a claim upon which relief can be granted against Defendants Gillman, Tyson, Doll, and Mahute. Indeed, as to these Defendants, this amended complaint plainly fails for several reasons.

First, the complaint violates the pleadings rules prescribed by the United States Supreme Court in <u>Ashcroft v. Iqbal,</u> __U.S. __, 129 S.Ct. 1937 (2009) in that it only contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." <u>Id</u>. at 1949. To the extent that the complaint is liberally construed to allege an Eighth Amendment violation, it is evident that the complaint in its current form does not provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) Nor do Hakeem's "[f]actual allegations . . . raise a right to relief above the speculative level." <u>Id.</u>

In fact, as to Defendant Mahute the amended complaint does not even contain "[t]hreadbare recitals of the elements of a cause of action." Rather, this Defendant is not mentioned anywhere in the body of the amended complaint beyond being listed in the caption of this case. (Doc. 18.) This complete failure to articulate in the complaint a basis for holding this Defendant accountable for some violation of the constitution now compels his dismissal from this lawsuit. See Thomas v. Conway, No. 04-1137, 2005 WL 2030304 (M.D. Pa. July 21, 2005)(failure to name defendant in body of complaint compels dismissal).

As for Defendants Gillman, Tyson and Doll, while Hakeem's amended complaint does contain a "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements", these cursory allegations are then rebutted by the facts which Hakeem recites in the body of his amended complaint. Those facts reveal that Hakeem was seen both by Physician Assistant Gillman and Tyson, and then was promptly referred to Dr. Doll on March 24, 2010. (Id., ¶22.) During this March 24 appointment Dr. Doll is alleged to have examined Hakeem's foot, recommended orthopedic shoes, and prescribed medication for Hakeem, medication which Hakeem declined to take. (Id.)

This factual recital simply does not describe a viable Eighth Amendment violation against any of these Defendants. Such a violation requires the court to "determine whether the prison official 'acted or failed to act despite his knowledge of

a substantial risk of serious harm.' <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994 [and further requires that a] prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' <u>Id</u>. at 837." <u>Garvey v. Martinez</u>, 08-2217, 2010 WL 569852, at *6 (M.D. Pa. Feb. 11, 2010). In this case, the recitals set forth in Hakeem's amended complaint refute any allegation of deliberate indifference to this inmate's medical needs on the part of these Defendants and, accordingly, completely undermine any Eighth Amendment claim against these Defendants. Rather, Hakeem's amended complaint describes an appropriate medical review of his foot ailments. It alleges that two physician assistants met with this prisoner and promptly referred his complaints to a doctor. The amended complaint then asserts that Dr. Doll conducted a medical examination of the Plaintiff, and prescribed a course of treatment for him. All of these actions, described by Hakeem in his amended complaint, are antithetical to a claim of deliberate indifference to serious medical needs. Instead, these allegations describe a course of deliberate care for this inmate. Therefore, as to these Defendants, without the inclusion of some further well-pleaded factual allegations, the allegations in these pleadings are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." <u>Iqbal</u>, 127 S.Ct. at 1979. Accordingly, these individual Defendants are entitled to be dismissed from this action.

## 2.    Hakeem Failed To Exhaust His Administrative Remedies With Respect to Some Defendants

In addition, Hakeem has failed to fully comply with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA") by completing the administrative exhaustion required by the PLRA.  See also Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) ("The [PLRA] requires that prisoners seeking relief in federal court must first exhaust the administrative remedies available at the prison level.").  Specifically, it appears that Hakeem has not fully exhausted the administrative remedies available to him before filing this action against Defendant Mahute, which arises out of alleged inadequate medical treatment received for a bullet fragment lodged in his right foot which allegedly causes him discomfort and a predisposition to the formation of blood clots. (Doc. 29, Exhibits "A" and "B", and Verification of Lisa Hollibaugh attached to the instant Motion as Exhibit "C", at ¶¶ 7-10.) In particular, with respect to Defendant Mahute, Hakeem's grievance suffers from the same flaw as his amended complaint. Like his complaint, in his grievance Hakeem did not specifically name Defendant Mahute as required by the grievance procedures. This failure is fatal to his ability to bring this lawsuit against Mahute and this claim against this Defendant should also be dismissed for failure to exhaust his administrative remedies.

3. **As to Dr. Long, Hakeem's Medical Complaints Do Not Rise to the Level of Deliberate Indifference to Serious Medical Needs But Merely Describe a Disagreement Between and Inmate and a Doctor Over the Proper Course of Treatment**

Furthermore, as to Dr. Long, it is apparent that Hakeem's claims fail to state a violation of a constitutional dimension. As we have noted, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

<u>James</u>, 230 F. App'x at 197-98(citations omitted).

With respect to the medical grievances recited by Hakeem regarding his foot care in his amended complaint, it is apparent on the face of the amended complaint

that Hakeem received extensive, on-going attention that entailed medical appointments, examinations, prescribed courses of treatment, x-rays, tests, care, consultations and a cane. Indeed, the only forms of treatment that were denied to Hakeem were surgery and orthopedic shoes. Hakeem's disagreement with Dr. Long over the necessity of these particular forms of treatment constitutes the gravamen of his Eighth Amendment claims against this particular Defendant. Thus, at bottom, as to Dr. Long, Hakeem's complaints state nothing more than a disagreement between the inmate and one of his doctors regarding the proper course of treatment.

It is well-settled that an inmate's dissatisfaction with a course of medical treatment does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229, 2002 U.S.App. LEXIS 11269, 2002 WL 1273649 (8th Cir.2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmates's ailments over time, and

inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); Czajka v. Caspari, 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir.1985) (inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth Amendment violation). Therefore, on these facts, as recited by the Plaintiff, Hakeem's complaints against Dr. Long fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

**4.** **Hakeem's Claims Against Defendant Dreibelbis Should be Dismissed for Failure to State a Claim Upon Which Relief May be Granted**

Finally, applying these constitutional benchmarks to this amended complaint, it is also apparent that Hakeem's complaint fails to state a claim upon which relief can be granted as to Defendant Dreibelbis a prison medical supeervisor, whose sole involvement in this case consisted of denying an administrative grievance lodged by Hakeem. Indeed, as to this Defendant, the complaint fails for several reasons.

First, as to this Defendant, the complaint violates the pleadings rules prescribed by the United States Supreme Court in Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009) in that it only contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Indeed, as to this Defendant this amended complaint simply recites that the Defendant rejected Hakeem's administrative grievance. This assertion plainly does not describe a viable Eighth Amendment violation, which requires the Court to "determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994) [and demands that a] prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id. at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

Nor can Hakeem sustain this claim against this Defendant by simply pointing to the actions taken by this official on various grievances which he filed following the period when he alleges that he received inadequate medical treatment. It is well-settled that inmates do not have a constitutional right to a prison grievance system. See Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

   **5.    The Court Should Not Exercise Ancillary Jurisdiction Over Any State Malpractice and Negligence Claims**

The dismissal of these constitutional claims, in turn, dictates the appropriate course for the Court to follow in addressing any ancillary state law negligence or

malpractice claims that Hakeem may wish to pursue against these Defendants. In a case such as this, where the jurisdiction of the federal court was premised on an alleged federal civil rights violation which is found not to state a cause of action upon which relief can be granted, the Court has observed that the proper course is for:

> [T]he court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims).

Bronson v. White, No. 05-2150, 2007 WL 3033865, at *13 (M.D.Pa. Oct. 15, 2007)(dismissing ancillary malpractice claim against dentist).

This course of action, dismissing ancillary state negligence and malpractice claims when an inmate's Eighth Amendment claims fail as an matter of law, has also been expressly endorsed by the court of appeals in Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008). In Ham, the appellate court approved this practice, stating in terms that are equally applicable here that:

> Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains. In addition, the District Court did not abuse its discretion in declining to address the state law negligence claims. 28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d

218 (1966); <u>Tully v. Mott Supermkts., Inc.</u>, 540 F.2d 187, 196 (3d Cir.1976).[4]

<u>Id</u>. at 151.

In short, without the inclusion of some further well-pleaded factual allegations, the constitutional claims set forth in this civil rights complaint contain little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." <u>Ashcroft v. Iqbal</u>, 127 S.Ct. at 1979. Therefore, we are compelled to recommend dismissal of this complaint.

We recognize that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the Plaintiff was given the opportunity to amend his complaint, has failed to state a viable cause of action, and the factual and legal grounds proffered here in support of the complaint make it clear that the Plaintiff has no right to relief. In such a setting, granting further

---

[4]Because we believe that it would be inappropriate to exercise jurisdiction over these ancillary state law claims given our ruling on the merits of Hakeem's constitutional claim, we express no opinion on the merits of this case as a negligence or malpractice action.

leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, this case should simply be dismissed.

## III.  <u>RECOMMENDATION</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' motions to dismiss (Docs. 29 and 32) be GRANTED.  IT IS FURTHER RECOMMENDED that Defendants Gillman and Tyson, who have not yet been served, also be dismissed from this lawsuit since Hakeem's amended complaint fails to state a claim against these Defendants upon which relief can be granted.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 1st day of December, 2010.

                                              **_S/Martin C. Carlson_**
                                              Martin C. Carlson
                                              United States Magistrate Judge